We're ready to hear from the appellant. Thank you. May it please the court and counsel, my name is Anne Talaferro and I represent the appellant in this case, Arapahoe Oldman. There is no question that this case is disturbing and that Mr. Charles Dodge was brutally beaten and murdered around Thanksgiving time in 2017. But substantial evidence that was presented at the trial demonstrates that although Mr. Oldman did beat this man, evidence suggests that he did not slit his throat, which was the injury in this case that was not survivable. But the jury was not given the choice to find Mr. Oldman guilty for what he admitted doing and for what there was substantial evidence that he did, which was beating him and leaving him alive though seriously injured. Was he also convicted of aiding and abetting? He was, your honor. And wouldn't that cover the not slitting his throat part? Well, and I don't believe so, your honor, because when we get into one of the issues I want to bring up with the court today, and I guess I can do it now, is the reason why the lesser included offense instruction should have been given. With regard, and you have to go through a variety of tests to do that, but the question is whether or not committing a substantial injury is always a subset or always part of a murder. We have indicated that Mr. Oldman did not slit his throat at the time, and there is some evidence suggesting that, and that perhaps Mr. White Plume, in fact, is the one that slit his throat at a later time. And so there evidence suggests that Mr. Oldman could not aid and abet in the slitting of Mr. White Plume's throat at a later time because he wasn't even present. He didn't necessarily know it was going to happen. And there's some law, it's in conspiracy type of law, but there is law indicating that when somebody leaves the area and indicates that he's no longer part of that criminal episode, that he's no longer aiding and abetting that situation. We also, so one of the issues that I do want to talk to the court about this morning, obviously, is this lesser included offense instruction. Also, as the court is aware, we've raised a number of we believe was the admission of some gruesome and very horrifying pictures of Mr. Dodge. The coroner described in his testimony that Mr. Dodge's- Counsel, counsel, can we talk about the lesser included offense? Because I think we started off with that. And as you pointed out, there are some elements or steps to go through to determine whether the lesser included should have been given. And of course, one of them is whether it was properly requested, and it was. But then we get to the second step, and that is whether the elements of the lesser offense are included in the elements of the greater offense. And I wanted to ask you a question about that. Because the district court said that that step was not met, that the elements of the lesser offense are not necessarily included in the greater offense. You're arguing the opposite. And one of the questions I've been struggling with, and I wanted you to address, has to do with whether an unlawful killing always involves an assault. And I take it you have to say that the answer to that is it does, right? It does, correct. We believe that an unlawful killing always involves an assault or of some way. It doesn't necessarily mean physical force, but it always involves an assault that creates serious bodily injury. And that's... And then... Well, let's not do serious bodily injury just yet. I'm interested in how broad the term assault can go. So for example, if someone lures someone else off a cliff intending for that person to have a fatal fall, why would that be an assault? It might be murder, but why would that be an assault? Well, I don't necessarily know. I don't necessarily... Well, I would indicate... I mean, there's been cases that would indicate that... Well, that's a good point, Your Honor. I don't know in that circumstance how luring somebody off what they would have to do. An assault is obviously some kind of offensive touching. In your circumstance, I don't know that there would be an assault in that, but I also don't know if that person could be convicted of murder necessarily, because their action would have to cause the injury. So I... Okay, let me give you another scenario. What if someone who was responsible for the care of an infant neglected that infant, intending that infant to die? Is there an assault? I think that there is an assault in the sense that the person harmed or somehow harmed that child. There is an assault. There's an offensive by not doing something. I guess when you say neglect, perhaps not feeding the baby or something of that... But that's not touching. That's not... It's not touching. And I don't believe that there has to be a physical touching in the sense that we mean it. I know that there's been... And I admit that I have struggled with this too, because it's very confusing to me. I know that there's been some cases that have indicated in looking at the common law of assault and battery, that perhaps poisoning somebody doesn't amount to assault. You can physically harm somebody without physically touching them. But through the years, and I'm probably going to mess this up, through the years, it has been indicated that the offensive battery and the offensive assault, they kind of are one and the same, and neither of them requires an actual physical touching in order to have an assault. Well, before we leave the elements, why does death always involve serious bodily injury? Which I think you would have to say that it does to support your position. Correct. And I think that the way that... Luckily, I point the court to, in my mind, as explained in Schmuck, an offense... In going back to the second element that the court found on, the elements of the lesser offense must be a subset of the elements of the charged offense. And this, I admit, is very confusing to me. The offense doesn't need to contain all the elements of the greater offense, but it just has to be a subset of it. It has to be impossible to commit the greater without having first committed the lesser, which is what we're talking about now. I take comfort at least knowing a little bit that it's more of a matter of common sense, quite frankly, rather than a mathematical or mechanical equation. And this court guided that in United States versus Benoit. And the court was looking at whether... The court applied the elements test, the charges of possession of child pornography and receiving pornography. And the court went beyond the superficial comparison of the elements and as a matter of logic, found that Benoit could not have been guilty of receipt without also being very similar. In comparing it, assault resulting in serious bodily injury is a subset of murder because we think that it's impossible to be guilty of murder without also being guilty of causing serious bodily injury. Well, what about starving to death? If you starve someone to death, you just lock them in a room and let them starve. But in starving... There's no assault in that situation, is there? Not in the sense of a physical touching. But I'm also not sure that you can be found guilty of first degree felony murder for that either. Well, we're looking at the element and the assault can be broader than assault. Causing the death? Yeah. And it may be. It may be, Your Honor. But then we go back to the common law issues of assault and battery, and that both battery and assault don't require an actual physical touching. But I understand that you're saying that perhaps you can cause a murder without causing an assault. I think what we're saying is that you can't cause serious bodily injury or you can't commit a murder without causing serious bodily injury. But when you say it that way, you're straying from the elements of first degree murder. All it says in the first element is cause the death. Right. But a subset of that is also causing serious bodily injury. But I understand what the court is saying that because we're asking for the lesser included instruction of assault with serious bodily injury, that perhaps you don't always have to commit the physical act of assaulting in order to cause a murder. So I will concede that point. If I could go into the second error that we've argued. This is the photos you're talking about? The gruesome photos? Yes, Your Honor. Can I ask you a question initially about that? I took it that your approach was the problem was not the multiplicity of photos, but the fact of any photo. If there had just been one of the gruesome one, that would have been enough for you to say that there was error. Perhaps. But the courthouse understand there were 95 or so photos that were graphic here in and of themselves. Ten of those were introduced. I think it's enough if one of those gruesome photos would have been would have been introduced. But there weren't. There were 10 of them. And these 10 photos were gruesome. They were horrific. They were completely irrelevant to the charges against Mr. Oldman. And we have asserted that they have, you know, violated due process in this case. But he pled not guilty. And they have to show that there was this terrible assault that resulted in his death. Absolutely. And isn't part of that showing photos? Absolutely. And that's why the other nine or eight. I can't count. I'm not very good at math. That's why the other 88 photos were okay, even though they were graphic, because they did show that his death. What these 10 photos show was the aftermath of Mr. White Plume and Mr. Tabajo attempting to cut off his head, attempting to desecrate his body, and cutting and disforming his face. Okay, so all of those photos, there were what, eight? Ten. Were photos after Mr. Tabajo presented himself to help discard the body? Yes. So the initial assault and perhaps whatever happened in the house happened around Thanksgiving time. A week later, Mr. White Plume and Mr. Tabajo and somebody else who was also present attempted to do what they did. And then the body was found thereafter. Mr. White Plume and Mr. Tabajo are the ones that put him in the crawl space and did whatever they did to the body at that point. Was there any dispute as to the time of death? There was a lot of dispute as to the time of death. So there was some evidence that the time of death occurred after the injuries in the photo, or at the time of the injuries in the photo. Well, when I say that there's question as to the time of death, there was the initial assault and my client indicates that he left and that Mr. Tabajo or that Mr. White Plume then sort of throw it sometime later. We don't know. There was evidence wasn't there that the time of death could have been at about the time Mr. Tabajo was involved? No, no. I believe that the initial assault happened, time of death could have been at about the time of death. So I think that your argument might be that those photos, those eight photos, had nothing to do with the time of death. Absolutely. And yet some of the time of death, but none of these eight. None of these did. The other photos I don't think necessarily relate to time of death, but they relate to how the body was found. They relate to the government's case. These 10 photos though were particularly gruesome and because they were done at the hands of not Mr. Oldman. Perhaps I should have been saying the condition of the body at the is not depicted in these eight photos, but the condition of the body at the time of death probably is depicted in some of the other 80-90 photos. And actually no, I don't think any of the pictures taken of him at that time depicted him at the time of death. They all were taken when Mr. Dodd was found after he had been put in there by Mr. Tabajo and Mr. White Plume. Thank you. Thank you, counsel. We're ready to hear from the state. Your Honor, thank you. May it please the court, counsel? Do you want to come forward a little bit so we can see you and hear you? Thank you. I'm sorry, Your Honor. Is that better? That's much better. Thank you. Generally, it's best for people if I stay further away. Your Honors, really the issue in this case that I plan to address, to spend most of my time on this morning, has apparently been, it sounds like, conceded. Judge Matheson, your questions went to the heart of this issue. Yours as well, Judge Briscoe. Whether every murder necessarily includes an assault, and the answer is no. If I could borrow some legal nomenclature from another context, assault is a means of committing murder, but assault is not an element of murder. The examples, Judge Matheson and Judge Briscoe, that you both gave really get to the heart of this, that there are ways of committing a murder that do not include any definition of assault. If there is even one way of committing a murder without committing an assault, then assault is not a lesser included offense of murder. That's really the end of the analysis. I would note, Your Honors, before I address the substance of this, this discussion this morning illustrates why this issue is not even properly before the conference when defense counsel objected to the failure to give a lesser included instruction on assault resulting in serious bodily injury. Defense counsel never argued that every murder involves an assault. Instead, she merely argued that the evidence in this particular case supports it. In rejecting the lesser included offense instruction, and this is at pages 1084 to 1087 of the transcript, and Judge Skavdal goes through the analysis, but Judge Skavdal never addresses specifically or in detail whether every murder involves an assault because that issue was never raised. As I explained in the brief, under federal rule of criminal procedure 30D, it's required that someone objecting to the failure of a jury instruction raise a specific objection. And where that's not done, this court's review on appeal is only for plain error. And, Your Honors, there's simply no way that Mr. Oldman can prevail on plain error here. First, he's never argued that he can. Well, but wasn't the import of what defense counsel was arguing is that a lesser included instruction should be given? I mean, it might not have been artfully stated to say, Judge, we think the evidence supports a lesser included here. Doesn't that mean I want a lesser included instruction? It certainly means, Judge Briscoe, I want a lesser included instruction. But again, rule 30D requires a specific objection, and this case is a good illustration of why. Let's say for the sake of argument that defense counsel had actually offered a very good argument as to why every murder involves an assault. And Judge Scavdall had said, you know what, counsel, I agree with you. I'm giving the instruction. Then the instruction is given, the jury considers it, and we're not faced with a situation where effectively on appeal an entirely new argument is being made, which if accepted, and the other requirements accepted as well, would result in reversal and a retrial of a very difficult first-degree murder case, victims having to re-go through everything. I mean, I won't belabor the point, Your Honors, but this particular issue, which counsel here has acknowledged is difficult, was never brought to the district court's attention. And since it was never brought to the district court's attention, it's not preserved under Rule 30D. And so therefore, Your Honors, we're at plain error review. And again, there's no argument that Mr. Oldman can possibly prevail on plain error review. He's never argued that in his briefing. And even if he had, he cited no authority from any court in support of the notion that assault resulting in serious bodily injury is a lesser-included offensive murder. The Eighth Circuit authority is that favors the government. So there can be no showing of plain error. And that is where we are, Your Honors. Turning more to the substantive issue, this is the line of questioning, Judge Matheson, that you brought up about whether every murder involves an assault. And the examples you gave, luring someone to his death is an interesting one. I could foresee an argument that if I lure someone off a cliff, that even though I'm not directly using physical force, or maybe the better way to say it is, I'm not causing any sort of offensive touching, offensive contact. Nevertheless, indirectly, the person is falling from a high height and smashing on the ground, and indirectly, I have caused the offensive touching, very much as if I had shot the person. The bullet is what causes the offensive touching, but I'm still on the hook for it. So luring, Your Honor, might not be the best example. However, infant neglect or starvation, as you brought up, Judge Briscoe, those are examples of factual circumstances where you would have a murder without an assault. Recall that there are three real ways of committing assault now that the definition of battery has sort of been subsumed. First is a battery, an offensive touching. And then second is an attempted battery, attempting to cause an offensive touching. And then finally is credibly threatening someone. Clearly, neither of the latter two apply. It's obviously possible to kill someone without threatening or without attempting anything. So the real question is, is battery in the common law sense required for every murder? And the answer is no. If I have a child who is lying in her crib and I decide that I'm tired of having this child and that I'm going to allow her to starve to death, I have not caused any offensive touching. And yet at the end of the day, I have murdered her. Or the same, Your Honor, perhaps if one were to withhold vital medication from someone who needed it, or food, as Judge committing assault. Therefore, assault resulting in serious bodily injury is not a lesser-included offensive murder. And really, Your Honor, unless Mr. Oldman can show to the contrary, the entire lesser-included instruction issue fails because it's just not a lesser-included offense. Briefly, Your Honor, I'd like to, Your Honors, I would like to address an alternative argument, which, again, in view of the arguments and potential concession here, may no longer be acceptable. Even if, even if this court were to, to ultimately decide that yes, every murder involves an assault, a lesser-included instruction would not have been appropriate in this case because what the defendant was not actually requesting was a lesser-included instruction. What the defendant was requesting was an instruction on an uncharged, legally and bodily injury where a lesser-included instruction would not have been appropriate. I'd like to approach it first by mentioning, Judge Briscoe, you brought up the aiding and abetting. And in fact, the verdict form indicates that the jury found in the alternative. It is phrased as first-degree murder or aiding and abetting. So at least based on the verdict form, it's not entirely clear which theory the jury relied on. But I would point the court to the defendant's reply brief. In the government's brief, I made the argument that, well, even if the jury had decided that Mr. Oldman did not do the throat-slitting, it had, it would have found him guilty of aiding and abetting. And that was in citation to this court's decision in Pluma. And in response, defense counsel argues that, well, the jury could have found that Mr. Oldman withdrew from this fatal mob assault against the victim and that later was killed by Mr. Whiteplume in a legally separate or distinct manner. But, Your Honors, even if the jury could have rationally concluded that Mr. Oldman withdrew and the murder was entirely separate, then the proper verdict would have been acquittal. The proper verdict would not have been, well, we find this happened before. Nevertheless, we're going to convict you of assault for what happened before. That would simply be convicting the defendant of an uncharged offense. I have an analogy, Your Honors, that I think will illustrate the point. Using the offenses of assault resulting in serious bodily injury and then simple assault, which undeniably have a lesser-included relationship. So let's say there's a fight and the victim is injured in that fight and the defendant is charged with assault resulting in serious bodily injury. And yet, at trial, there is some evidence that the injury was not serious. And the defendant says, I'd like a instruction on simple assault. Well, in that circumstance, the simple assault instruction would be appropriate. What are elements of assault resulting in serious bodily injury? Is that the defendant assaulted the victim, resulting in serious bodily injury? The elements of simple assault, the defendant assaulted the victim. Now, under the third step of the Duran analysis for lesser-included offenses, an instruction is appropriate if the element differentiating the greater and the lesser offense is in dispute. So in my example, that would be true. There would be a dispute about whether that resulting in serious bodily injury was met. And if you go to the fourth step of the Duran analysis, a jury rationally could conclude that the defendant is not guilty of assault resulting in serious bodily injury because the injury wasn't serious, but is still guilty of simple assault. So now let's change the facts, though, to make it match with what's being argued here. Let's say there is no dispute that the victim in this fight suffered serious bodily injury. Let's say he's paralyzed. And at trial, the defendant's defense is now, well, but I didn't do that. Someone else did that. So the question is, is the element differentiating the two offenses in dispute? And it's not. There's no dispute that the resulting in serious bodily injury happened. What's in dispute is the identity of the perpetrator. But that identity element is So the defense really is not, I'm guilty of a lesser offense. It's that I'm not guilty of this. I may be guilty of something else that was not charged, but I'm not guilty of this. And that's the fundamental problem, Your Honors, as well with Mr. Oldman's argument. Even assuming, just for the sake of argument here, that murder is equivalent to assault resulting in serious bodily injury resulting in death. An instruction on the assault would only be appropriate if the resulting in death, which is the differentiating element, were in dispute. But in this case, it wasn't. Counsel? Yes. So I had understood your argument, or at least one of your arguments to be, that the lesser included instruction, the court was not required to give it because of the fourth element of the test. That is that the jury could have acquitted, or could not have acquitted, Mr. Oldman of aiding and abetting. In other words, the instruction could only be given if the district court were convinced both that he could be convicted of the lesser charge but could be acquitted of the greater because the throat slit happened after he left the basement or left the location of the assault. Your Honor, I believe the answer is yes. If the jury had, say the jury decides we don't believe Matthew White Plume at all, we don't believe Bernadette Brown at all, or at least we disbelieve certain parts of her testimony, then yes. As a matter of yes or no, the jury could rationally have concluded, assuming again what they choose to believe about those witnesses, that the defendant is innocent of aiding and abetting and innocent of murder both. So you're saying that that element of the lesser included offense favors the defendant? Well, it doesn't favor the defendant, Your Honor, because it's one thing to say the jury rationally could have acquitted the defendant. And that's one thing. It's yet another thing to say that the jury also could have rationally convicted of the lesser offense. And the point that I'm making, Your Honor, is that let's say the jury does in fact conclude, wow, we think Mr. Oldman withdrew and he had nothing to do with that fatal throat slitting. Well, then he's not only innocent of murder, he's innocent of every lesser included offense of murder. Now, he may be guilty of some for striking Mr. Dodge with the crowbar, for example. But that's not a lesser included offense of what's charged, because it would be legally separate and distinct. So that's the point, Your Honor. Couldn't you aid and abet murder by beating somebody to a pulp but not killing them and then withdrawing, and then another person comes in and slits their throat? Haven't you aided and abetted in the murder in that you've weakened the victim for the ultimate murder? It really would depend on the facts, Your Honor. I mean, the throat slitting, I would say, assuming it's entirely distinct, which again, the government doesn't concede, but assuming the throat slitting is entirely distinct, maybe it happens two days later or something, it may be that the initial assault is sufficiently attenuated that it would not be aiding and abetting. I see my time's expired, Your Honor. The United States would urge this court to affirm. Judge Briscoe? Judge Briscoe, can I just ask a question? I didn't want to interrupt about the photographs. None of these photographs that were admitted depict the condition of the body at the time of death, correct? That's correct, Your Honor. So what's their relevance? Well, they're relevant, Your Honor, because they're the best evidence the government had of the condition of the body. There were no pictures of the body. It's not the condition of the body at the time of death. It's the condition of the body likely well after death, right? Well, that's correct, Your Honor, but the pictures nevertheless depict anti-mortem injuries, and there was testimony to that effect, both anti-mortem and post-mortem. There were disputes about who and when the anti-mortem and post-mortem injuries were caused, so certainly those pictures had a tendency to make material facts more or less likely, so they certainly were relevant, Your Honor. So in the examination of some of the witnesses, or at least one of the witnesses, your expert, did somebody distinguish between injuries that were before and after death? Yes, Your Honor. Okay, so they would say, well, this clearly occurred before Mr. Dodge died, and this one clearly occurred after. Yes, Your Honor. There was testimony to that effect. I don't know that the, I'd have to look and see whether the coroner testified to that effect, but the pathologist certainly did. Okay, thank you. Thank you, Your Honors. Thank you. Thank you both for your arguments. I think your time is up also, correct? Thank you. This case is submitted. We thank you both for your arguments this morning. Court is adjourned.